J-S29027-20

2021 PA Super 151

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KYSHON PARSON | : | |
| | : | |
| Appellant | : | No. 1061 EDA 2019 |

Appeal from the Judgment of Sentence Dated March 22, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007709-2015

BEFORE:   PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

OPINION BY NICHOLS, J.:                              **FILED JULY 28, 2021**

Appellant Kyshon Parson appeals from the judgment of sentence imposed following the revocation of his probation.  Appellant argues that the violation-of-probation (VOP) court abused its discretion by imposing a VOP sentence after another court suppressed the physical evidence forming the basis of his violation.  We vacate the judgment of sentence and remand the matter for further proceedings consistent with this opinion.

The underlying facts of this case are well known to the parties.  ***See*** VOP Ct. Op., 6/27/19, at 1-4.  Briefly, Appellant pled guilty to illegal possession of a firearm and related offenses in 2016.  The trial court sentenced Appellant to nine to twenty months' house arrest followed by two years' probation.  As a condition of his probation sentence, Appellant was prohibited

_____

[*] Retired Senior Judge assigned to the Superior Court.

from owning or possessing firearms. Order, 3/30/16, at 1 (stating that Appellant shall "not own or possess firearms").

On August 18, 2018, while on probation in the instant case, Appellant was involved in a traffic stop, arrested for possessing a firearm, and charged with new offenses at Docket No. 6266-2018 (the new case). The VOP court scheduled a **Gagnon II**[1] hearing in the instant case for November 20, 2018.

On November 19, 2018, Appellant filed a motion to suppress physical evidence with the trial court presiding over his new case, alleging that both the traffic stop and subsequent search leading to his arrest were illegal.

On November 20, 2018, Appellant appeared for the scheduled VOP hearing in the instant case. Appellant requested a continuance pending the resolution of the new charges at Docket No. 6266-2018. The VOP court denied Appellant's request to continue the matter until the new charges were resolved, but ultimately agreed to continue the case to provide Appellant's new counsel adequate time to prepare for the hearing.

At the rescheduled VOP hearing on December 7, 2018, Appellant again requested that the VOP court continue the matter until the new case was resolved.[2] **See** N.T. VOP Hr'g, 12/7/18, at 5. Appellant explained:

> It was my understanding that Your Honor had intended to hold a violation hearing before [the resolution of Appellant's new case],

---

[1] **Gagnon v. Scarpelli**, 411 U.S. 778 (1973).

[2] Appellant did not raise his suppression issue with the VOP court, nor did he inform the VOP court that a suppression motion was pending with the trial court.

- 2 -

which is listed for, I believe, December 13, 2018, in a separate room.

I had expressed and requested that the [c]ourt not hold a violation hearing in advance of th[e new case]. Again, I don't see any, respectfully, any merit to finding [Appellant] in technical violation of his probation.

Additionally, I think there are issues as it relates to [Appellant's] Fifth Amendment rights, as I may not be able to have him appropriately address this [c]ourt as it relates to any alleged technical violation with [the new case scheduled for] December 13th[, which was the following week]. So I would renew my request to postpone or pass this matter to after the 13th.

*Id.* at 5-7.

The Commonwealth joined Appellant's request for a continuance and argued that, as a matter of public policy, no further action should be taken on Appellant's VOP matter until the new case had been resolved. *Id.* at 11. The Commonwealth also argued that the VOP court was infringing on the District Attorney's discretionary powers by ordering the Commonwealth to subpoena police witnesses and proceed with the violation hearing, despite the District Attorney's policy.[3] *Id.* at 12-13.

---

[3] Philadelphia District Attorney Lawrence Krasner, Esq. appeared on behalf of the Commonwealth. District Attorney Krasner explained that, for public safety reasons, it was imperative for police officers to remain on the streets during daytime hours, rather than require them to appear for VOP hearings that may be unnecessary in cases where a defendant's alleged violation is based solely on new charges. *See* N.T. VOP Hr'g, 12/7/18, at 10-11. Specifically, he stated:

Our policy, in general, has been that prior to resolution of an open bill, we do not want to proceed with what we consider to be essentially a *Daisy Kates* proceeding. And we don't want to do that, obviously, in part for the reasons I just conveyed about calling police officers twice when it's only necessary to call them

*(Footnote Continued Next Page)*

The VOP court denied the parties' continuance request and explained that it was the court's duty to determine "whether a defendant should be held in technical violation or how he is sentenced pursuant to that violation." ***Id.*** at 17-18. After the Commonwealth reiterated its objection and declined to question the officers who had been subpoenaed for the hearing, the VOP court proceeded to conduct direct examination of Officer Caren Perez, in part, as follows:

> THE COURT: Yes, good morning. Were you involved in the arrest of -- first of all, do you recognize that person seated there?
>
> [Officer Perez]: Yes, I do.
>
> THE COURT: How do you recognize him?
>
> [Officer Perez]: We had a car stop on Broad.
>
> We stopped the vehicle for, I believe, tinted windows. I came on the passenger's side, so I was mostly interacting with the passenger, and my partner[, Officer Lucas Powell,] was the one that mostly interacted with [Appellant]. He was on the driver's side, and he was the one getting his information and his license and registration for the vehicle.
>
> After asking him a couple questions, we -- after my partner asked [Appellant] some questions, we ran their information. And he was very nervous, and he was moving around a lot. My partner asked him if there was -- we always ask anybody if they have a permit to carry or if they are carrying a weapon in the vehicle. And when my partner asked that, he was kind of stuttering. After that, my

---

> once. We also don't want to do it because there is a conviction in the case, if there is a conviction, then at that point, there's [no] necessity for going through those testimonial proceedings.

***Id.*** at 12. Later in the hearing, the Commonwealth made clear that its "problem [was] with the [VOP c]ourt, frankly, undermining the prosecution's position by assuming powers that belong to the prosecution." ***Id.*** at 42-43.

partner again asked him if there was a weapon in the car, and he stated yes, and he directed to where it was at.

THE COURT: "He," meaning [Appellant]?

[Officer Perez]: Correct.

THE COURT: What happened then?

[Officer Perez]: After then, my partner removed him from the vehicle. He was placed in handcuffs and placed in a car, and the weapon was recovered from under the seat.

*Id.* at 26.

Although Officer Powell was also present at the hearing, the Commonwealth objected to having him testify, arguing that it was unfair to allow Appellant to conduct a "broad cross-examination" of the arresting officer a week prior to the trial scheduled in the new case. *Id.* at 41. The VOP court sustained the Commonwealth's objection and declined to conduct any further questioning. *Id.* at 42.

At the conclusion of the hearing, Appellant argued, in part, as follows:

I would ask Your Honor not to find [Appellant] in technical violation for various reasons. The main one being this, is that [Appellant] contests the testimony of Officer Perez. However, I'm not going to call [Appellant] today to testify in a violation hearing one week in advance of his trial [on the new charges].

I appeared at a hearing that was scheduled by this [c]ourt. I asked this [c]ourt's permission to wait so that we could fully examine witnesses and call our own witnesses, if necessary, and also protect [Appellant's] rights. I think it's premature at this time to find [Appellant] in violation based solely on the testimony that you heard today.

I ask that you [not] find by a preponderance that [Appellant] told either Officer Powell or Officer Perez that there was a firearm on the floorboard . . . that simply Officer Powell continued to scream,

- 5 -

"Is there a gun? Is there a gun," and they searched a vehicle, which did not belong to [Appellant] and found a firearm.

*Id.* at 43-45.

The VOP court ultimately found Appellant "in technical violation of his supervision, specifically for being in violation of the condition of his probation that he not own or possess any firearms." *Id.* at 45. Further, the VOP court explained:

This [c]ourt concludes by a preponderance of the evidence that, in fact, he did [so] while under this [c]ourt's supervision. Therefore, the probation is revoked.

This [c]ourt also finds that [Appellant] is not amenable to supervision at this time and likely to reoffend.

This [c]ourt finds of particular concern the fact that [Appellant] has violated the conditions of his probation with the same type of conduct that he is on probation for and its concern for the safety of the community.

*Id.* at 45-46. Sentencing was deferred for thirty days, but ultimately rescheduled for March 14, 2019.[4]

Meanwhile, the new case proceeded to a suppression hearing on January 8, 2019, at which time Officer Powell, who did not testify at the VOP hearing in the instant case, testified regarding the traffic stop and discovery of the

_____

[4] The record reflects that the VOP court originally scheduled Appellant's sentencing hearing for January 18, 2019. *See* N.T. Sentencing Hr'g, 3/14/19, at 7. However, the VOP court subsequently granted two continuances at the request of Appellant's counsel, who sought additional time for "further investigation" prior to the first listing and because he was unavailable for the second listing.

firearm. Based on Officer Powell's testimony, the trial court granted Appellant's motion to suppress physical evidence in the new case.

On March 13, 2019, the day before Appellant's sentencing hearing in the instant case, Appellant filed a motion to suppress with the VOP court. Appellant asserted that "a court of competent jurisdiction, after hearing the testimony of Officer Powell, the key witness [in Appellant's new case], found that Officer Powell was not credible." *See* Mot. to Suppress, 3/13/19, at 1 (unpaginated). Appellant argued that the VOP court could not disturb "the ruling of the trial court granting [Appellant's] motion to suppress physical evidence." *Id.* at 2. Therefore, Appellant requested that "[a]ccordingly, under the law of the case doctrine, . . . [the VOP court] exclude any and all mention of said evidence during [Appellant's] sentencing hearing." *Id.*

At the sentencing hearing, the following exchange occurred between the trial court and Appellant's counsel:

> [Appellant]: It's a motion to suppress physical evidence. It's also subtitled a motion to exclude the admission of physical evidence as a court of competent jurisdiction has made a credibility finding on the admissibility of the contraband alleged or, I guess I'd say, giving rise to the violation. That would be my motion, Judge.
>
> THE COURT: Okay. I guess -- I'm looking at the chronology of things. [A c]ourt of equal jurisdiction, this court, made factual findings that resulted in the defendant being held in technical violation on [December 7th].
>
> When was that motion [to] suppress granted on the open bill, you said?
>
> [Appellant]: That was after this [court] made technical -- made findings on the record that [Appellant] was in technical violation. I would reference for the court that Officer Powell is the recovering

- 7 -

officer, allegedly recovered the contraband in this case, was the person that interacted with [Appellant]. He did not testify before this court. We heard from another officer who was essentially his partner and the recorder that day. Both Officer Powell and Officer Perez were present. I believe that the Commonwealth had inquired or had objected to calling Officer Powell and this court sustained that objection. So this [c]ourt did not hear from Officer Powell who was the, really, eyes and ears of that investigation. Again, I also found no specific case law as to when we would be permitted to litigate a motion to suppress as it relates to his violation -- his violation hearing. I did not see any law that unearthed that, once Your Honor found him in technical violation, we could not challenge the constitutionality of the search.

THE COURT: All right. Well, in as much as the court has already made those factual determinations, pursuant to which [Appellant] was held in technical violation, the motion to suppress filed yesterday is dismissed. So, now, we can move to sentencing.

N.T. VOP Sentencing Hr'g, 3/14/19, at 7-9.

Ultimately, the VOP court sentenced Appellant to an aggregate term of one to five years' incarceration.[5] *Id.* at 17. Appellant filed a timely notice of appeal on March 28, 2019. The VOP court did not order Appellant to file a Pa.R.A.P. 1925(b) statement but issued a Rule 1925(a) opinion addressing Appellant's probation violation and the suppression motion that he filed prior to the sentencing hearing.

On appeal, Appellant raises the following issue:

Whether Appellant's due process rights were violated when the [VOP court] imposed sentence pursuant to a finding of technical

_____

[5] Initially, the VOP court sentenced Appellant to concurrent terms of one to five years' incarceration on each of the three VUFA charges in the original case. On March 22, 2019, the VOP court vacated its sentence for two of the VUFA offenses because Appellant's supervision for those crimes had already expired. The remaining sentence was a term of 1-5 years' incarceration for VUFA-6108, which is the statutory maximum.

violation of probation notwithstanding the suppression [of] the same evidence underlying the technical violation by the trial court—a court of coordinate jurisdiction?

Appellant's Brief at 6 (some formatting altered).

The crux of Appellant's claim is that the VOP court abused its discretion by sentencing Appellant for his technical probation violation after the trial court granted a motion to suppress evidence in the new case. **Id.** at 10-11.

First, Appellant argues that the trial court's suppression ruling in the new case rendered his technical probation violation in the instant case moot. **Id.** Although Appellant acknowledges that he was found in violation of his probation **before** the trial court granted the suppression motion in the new case, he contends that "the coordinate jurisdiction doctrine should still apply," as it is "remarkably unjust to allow the temporal posture of the finding of technical violation [to] be a deciding factor in whether violative evidence is admissible at violation hearings." **Id.** at 14.

Second, Appellant argues that the VOP court erred by imposing a sentence of total confinement. **Id.** at 15. Specifically, he challenges the trial court's conclusion that he was "not amenable to supervision and likely to reoffend," because "the basis of the finding of technical violation was determined to be constitutionally violative; and the sentence was not essential to vindicate the authority of the [c]ourt" under Section 9771(c). **Id.**

The Commonwealth agrees that relief is due, but for different reasons. Commonwealth's Brief at 6. Specifically, the Commonwealth argues that the VOP court abused its discretion by ordering the parties to proceed with the

violation hearing despite the Commonwealth's objection. *Id.* at 7. The Commonwealth contends that the District Attorney's office has "discretionary power to delay revocations" and that, given the Commonwealth's reasons for requesting a continuance, the VOP court "acted manifestly unreasonably." *Id.* at 9. The Commonwealth reiterates that its policy is to defer "probation violation hearings involving open criminal matters until after trial on those matters." *Id.* The Commonwealth contends that "[s]uch a procedure would have been particularly appropriate here, where the trial court insisted on holding a probation violation hearing, but then deferred sentencing on the violation until after the trial on the new charges." *Id.* Under these circumstances, the Commonwealth asserts that it is difficult to "articulate a logical rationale for conducting the [VOP hearing] before the trial" on Appellant's new charges and, therefore, Appellant is entitled to relief. *Id.*

When considering an appeal from a sentence imposed following the revocation of probation, "[o]ur review is limited to determining the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing." *Commonwealth v. Perreault*, 930 A.2d 553, 557 (Pa. Super. 2007) (citations omitted); *see also* 42 Pa.C.S. § 9771(b).

Revocation of a probation sentence is a matter committed to the sound discretion of the trial court, and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion. *Commonwealth v. Smith*, 669 A.2d 1008, 1011 (Pa. Super. 1996); *see also*

42 Pa.C.S. § 9771(a) (stating that, while a defendant is on probation, the court "has inherent power to at any time terminate continued supervision, lessen the conditions upon which an order of probation has been imposed or increase the conditions under which an order of probation has been imposed upon a finding that a person presents an identifiable threat to public safety").

In order to revoke a defendant's probation, "the VOP court must find, based on the preponderance of the evidence, that the probationer violated a specific condition of probation or committed a new crime . . . ." **Commonwealth v. Foster**, 214 A.3d 1240, 1243 (Pa. 2019); **see also** 42 Pa.C.S. § 9771. "Unlike a criminal trial where the burden is upon the Commonwealth to establish all of the requisite elements of the offenses charged beyond a reasonable doubt, at a revocation hearing the Commonwealth need only prove a violation of probation by a preponderance of the evidence." **Commonwealth v. Moriarity**, 180 A.3d 1279, 1286 (Pa. Super. 2018) (citation omitted). As our Supreme Court has explained, "preponderance of the evidence is 'a more likely than not inquiry,' supported by the greater weight of the evidence; something a reasonable person would accept as sufficient to support a decision." **Commonwealth v. Batts**, 163 A.3d 410, 453 (Pa. 2017) (citations omitted).

It is well settled that "[p]robation may be revoked on the basis of conduct which falls short of criminal conduct." **Commonwealth v. Colon**, 102 A.3d 1033, 1042 (Pa. Super. 2014) (citation omitted). Further, where a defendant is charged with a parole/probation violation based on the

commission of a new crime (*i.e.*, a direct violation), the VOP court may proceed with the violation hearing before the defendant is convicted of the new charges. **See generally Commonwealth v. Kates**, 305 A.2d 701 (Pa. 1973) (holding that it is permissible for courts to conduct revocation hearings for direct violations, known as a **Daisy Kates** hearing, prior to trial on the underlying charges). This Court has explained that "in many cases it may be 'preferable to defer [a VOP] hearing until after the trial, thus avoiding the possibly unjust result of revoking probation, only to find later that the probationer has been acquitted of the charges that prompted the revocation hearing.'" **Commonwealth v. Giliam**, 233 A.3d 863, 869 (Pa. Super. 2020) (citation omitted); **see also Foster**, 214 A.3d at 1243.

However, our Supreme Court recently clarified that

> [o]ur law is clear: trial courts have broad authority to modify or terminate their own supervisory orders. And while this Court has expressed a preference for deferring VOP proceedings until after the resolution of a defendant's new charges, **we have never held that trial courts lack the discretion to hold VOP hearings prior to a probationer's new trial.**

**Commonwealth v. Mayfield**, 247 A.3d 1002, 1007 (Pa. 2021) (emphasis added and footnotes omitted).

Our Supreme Court has held that the exclusionary rule, which bars the use of illegally obtained evidence, applies in the context of a probation violation hearing. **Commonwealth v. Arter**, 151 A.3d 149, 167-68 (Pa. 2016). Therefore, where evidence in a criminal case is suppressed by the trial

court, that evidence cannot be used to establish a probation violation at a subsequent violation hearing. *See id.*

However, "an order of suppression in a criminal case is not a valid and final judgment with respect to the accused's guilt" for purposes of a probation violation. *Commonwealth v. Castro*, 856 A.2d 178, 182 (Pa. Super. 2004). Therefore, while a favorable suppression ruling may affect the availability of evidence that can be used to establish a probation violation, it is not a determination on the "issue of ultimate fact" regarding whether the probationer committed the violation. *Id.*

Here, in its Rule 1925(a) opinion, the VOP court addressed Appellant's technical violation as follows:

> On December 7, 2018, Appellant was found in violation of his probation following a hearing at which a police officer testified to Appellant's possession of a firearm. The underlying criminal case was still open at the time of the violation hearing. Five weeks later, another judge of this [c]ourt granted a defense motion to suppress of the firearm in the underlying criminal case. On March 13, 2019, more than three months after the violation hearing, counsel for Appellant filed a motion to suppress the gun in this violation of probation proceeding, in reliance upon the subsequent motion to suppress decision of another judge, that the police officer who testified before her was not credible.

> Appellant argued in his motion, and briefly the following day at sentencing, that the suppression decision in the underlying matter must be honored by this [c]ourt in the violation matter. Because the violation had already been found, it was irrelevant that Appellant was subsequently the beneficiary of a suppression order.

\*   \*   \*

- 13 -

> At the time this [c]ourt heard evidence and found a violation, there was no suppression order. Accordingly, the fact that a [c]ourt subsequently suppressed the gun that formed the basis of this [c]ourt's violation finding, is of no moment. . . .
>
> The instant situation is distinguishable from **Arter**, wherein the Supreme Court ruled that the Pennsylvania Constitution required application of the exclusionary rule to revocation proceedings. In **Arter**, the suppression decision in the criminal case **preceded** the revocation decision. Here, there was no suppression order at the time of the revocation hearing. . . . Nor does the later outcome (suppression) in the new criminal case serve to somehow void the revocation decision after the fact. The revocation decision was made at the time of the hearing, based on the then-existing evidence and procedural posture. In sum, subsequent rulings in the underlying criminal matter do not serve to void the probation court's decision, which was based on the evidence presented in the violation hearing that preceded it.

VOP Ct. Op. at 4-6 (some formatting altered).

Initially, we reject the parties' assertion that the VOP court abused its discretion by proceeding with the VOP hearing over the Commonwealth's objection or before Appellant's new charges were resolved. Both Section 9771 and our Supreme Court's decision in **Mayfield** make clear that it is the court, not the Commonwealth, that has "inherent power" to revoke a defendant's probation. **See** 42 Pa.C.S. § 9771(a); **Mayfield**, 247 A.3d at 1007. Although it is often more prudent to defer a VOP proceeding until after the resolution of a probationer's new charges, it is not a requirement. **See Mayfield**, 247 A.3d at 1007. Therefore, the VOP court had the authority to proceed with Appellant's violation hearing once the alleged probation violations were reported by the Probation Department, regardless of the status of Appellant's new case or the Commonwealth's position. **See id.**

- 14 -

With respect to Appellant's suppression claim, Appellant raised this issue at the VOP sentencing hearing after the trial court suppressed the evidence forming the basis for his probation violation. **See** N.T. VOP Sentencing Hr'g, 3/14/19, at 7-9. The VOP court rejected Appellant's claim, stating that it had "already made those factual determinations, pursuant to which [Appellant] was held in technical violation." **Id.** at 9. However, although the VOP court made factual findings concerning the violation itself, the VOP court did not consider Appellant's suppression issue. **See** N.T. VOP Hr'g at 45-46.

We note that, although our Supreme Court held that the exclusionary rule applies to VOP proceedings in **Arter**, there is no corresponding rule that establishes the procedure for pursuing suppression claims in a VOP matter. However, even in the context of a criminal proceeding, the rules provide an exception for trial courts to consider untimely suppression claims when "the opportunity did not previously exist, or the interests of justice otherwise require. . . ." **See** Pa.R.Crim.P. 581(B).

Here, because the trial court sustained the Commonwealth's objection to Officer Powell's testimony at the VOP hearing, **see** N.T. VOP Hr'g at 41, it is not entirely clear whether Appellant could have fully litigated his suppression claim at that time. Moreover, we cannot fault Appellant for choosing to pursue his suppression claim in the pending VUFA case, where the consequences of a conviction would be much greater.[6]

---

[6] We note that the lack of clarity surrounding the procedure for raising suppression claims in VOP matters is particularly problematic for defendants
*(Footnote Continued Next Page)*

Under these circumstances, we conclude that the VOP court erred by declining to consider Appellant's challenge to the probation violation in light of the trial court's suppression ruling. **See Arter**, 151 A.3d at 167-68 (holding that the exclusionary rule applies to probation proceedings and that inadmissible evidence cannot be used to prove a probation violation). Further, because it appears that the VOP court relied, at least in part, on evidence that was later suppressed, the violation cannot stand. **See id.**

Therefore, we vacate Appellant's judgment of sentence and remand the matter to the VOP court for further proceedings. On remand, the VOP court shall conduct a hearing to consider whether, and to what extent, the suppressed evidence formed the basis of Appellant's technical violation before the VOP court.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

*Judgment Entered.*

_____

Joseph D. Seletyn, Esq.
*Prothonotary*

Date: _7/28/2021_

_____

who are charged with a direct violation or, as in the instant case, a technical violation that is inextricably linked to a pending criminal matter. With no clear guidance on the procedure for raising suppression claims in VOP cases, it is unclear how a defendant can preserve a suppression issue with the trial court, **see** Pa.R.Crim.P. 581, while simultaneously avoiding the possibility of waiver or collateral estoppel by litigating the suppression issue before the VOP court if the court proceeds with a violation hearing over the parties' objection.