J-A01009-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN MEADOWS | : | |
| | : | |
| Appellant | : | No. 3189 EDA 2024 |

Appeal from the Judgment of Sentence Entered October 21, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008885-2022

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN MEADOWS | : | |
| | : | |
| Appellant | : | No. 3190 EDA 2024 |

Appeal from the Judgment of Sentence Entered October 21, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008886-2022

BEFORE:  DUBOW, J., KUNSELMAN, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED MARCH 2, 2026**

Appellant, Brian Meadows, appeals from the October 21, 2024 judgment of sentence entered in the Philadelphia County Court of Common Pleas, which the court imposed on Appellant after revoking probation due to his failure to report to the Philadelphia Adult Probation and Parole Department ("APPD"). Appellant argues that the Commonwealth failed to prove that he violated his

probation by not reporting while he was incarcerated or in halfway houses in New Jersey. After careful consideration, we affirm.

On March 6, 2023, Appellant, who also goes by the name Tyler Harrison, entered a negotiated guilty plea to one count of Retail Theft-Taking Merchandise[1] for a crime occurring on October 9, 2019, charged at Docket No. 8885-2022, and one count of the same crime for an incident occurring on October 27, 2019, charged at Docket No. 8886-2022.[2] Following Appellant's guilty plea, the court imposed two years of probation at each docket to be served concurrently. In relevant part, the terms of probation required Appellant to report to his probation officer "as directed" and to notify his probation officer within 72 hours of any change in address. Negotiated Guilty Plea Orders, 3/6/23.

On May 30, 2024, the court entered a bench warrant for a violation of probation ("VOP"). Following Appellant's August 26, 2024 arrest in New Jersey and subsequent extradition, he returned to custody in Philadelphia on September 10, 2024. The court held a *Gagnon I* hearing on September 17, 2024.

On October 21, 2024, the court held a *Gagnon II* hearing on the VOP allegations. In the brief hearing, the Commonwealth neither entered any evidence into the record nor presented any testimony from probation officers

---

[1] 18 Pa.C.S. § 3929(a)(1).

[2] These cases have been addressed jointly throughout the proceedings, and this Court consolidated the cases for appeal.

or other witnesses. Instead, both the Commonwealth and Appellant's counsel addressed information contained in the ***Gagnon*** summary, which is included in the certified record.[3] Appellant argued that he did not violate the terms of his probation by failing to report because he was incarcerated or in halfway houses in New Jersey. Appellant's counsel provided, and the Commonwealth did not dispute, the following recitation of Appellant's incarcerations and placements in New Jersey:

- March 15 - August 25, 2023: incarcerated in Bergen County, New Jersey;

- August 25, 2023[4] - January 8, 2024: incarcerated in New Jersey state custody;

- January 8 - February 15, 2024: placed in a substance abuse program at a halfway house;

- February 15 until June 4, 2024: voluntarily returned to incarceration in New Jersey state custody;

- June 4 - August 26, 2024: placed in a New Jersey halfway house;

- August 26, 2024: arrested on the May 30, 2024 bench warrant.

_____

[3] ***Gagnon v. Scarpelli***, 411 U.S. 778 (1973). The Sensitive Documents portion of the certified record includes a ***Gagnon I*** summary dated September 12, 2024, a ***Gagnon II*** summary dated September 24, 2024, and a ***Gagnon II*** summary dated October 21, 2024. The parties did not clarify which ***Gagnon*** summary they intended to reference, referring only to "the ***Gagnon***." N.T. VOP Hr'g, 10/21/24, at 4-6. We recognize, however, that the summaries contain identical information, other than details regarding the supervising probation officer and additional details in the later two summaries regarding his outstanding wanted person warrants in other jurisdictions, which are not relevant to the issues on appeal.

[4] The parties acknowledged but could not explain a discrepancy in the New Jersey records relating to whether the August transfer occurred on August 14th or 25th. ***Id.*** at 4-5. The date is not relevant to our review.

N.T. VOP Hr'g at 4-5.

Addressing the allegations that he failed to contact APPD, Appellant claimed that he was not allowed to leave the halfway house or to make phone calls, although he later stated that he "had ten minutes a day on the phone." *Id.* at 7. Appellant provided the following explanation of his attempts to contact APPD:

> There's a number you guys have for the probation department and I called several times. It's an automated machine. If you have no information of who your parole or probation officer is, you can't get through to the next person. I would try to make an attempt to try to call the probation department and make contact. Other than that, Your Honor, when I was in some of these places, I made contact with probation and parole in Montgomery County.[5]

*Id.* at 11.

At the conclusion of the hearing, the VOP court found that Appellant committed technical probation violations by failing to report his changes of address and failure to report to APPD. Accordingly, the court revoked Appellant's probation and imposed concurrent sentences of two years of probation at each docket number. The court, however, permitted Appellant to transfer his supervision to Bergen County, New Jersey, as Appellant asserted that New Jersey required him to be in a halfway house "for the next year." *Id.* at 14.

On October 31, 2024, Appellant filed post-sentence motions for reconsideration of sentence at each docket, claiming that the Commonwealth

_____

[5] Appellant was also on supervision in Montgomery County. *Id.* at 11-12.

- 4 -

presented insufficient evidence of a probation violation because "the Commonwealth failed to prove by a preponderance of the evidence that [Appellant] had the opportunity to contact Philadelphia probation while incarcerated in New Jersey state custody and while held at the halfway houses[.]" Post-Sentence Mot., 10/31/24, at ¶ 7.

As the VOP court did not act on this motion within 30 days,[6] Appellant filed separate notices of appeal at each docket on November 19, 2024. Appellant and the VOP court complied with Pa.R.A.P. 1925.

Appellant raises the following issue on appeal:

> Did the supervising court err and abuse its discretion by revoking [Appellant's] probation and imposing new probationary terms, where the evidence presented at the violation hearing did not show by a preponderance of the evidence that [Appellant] willfully violated the terms and conditions of his probation, nor that probation had proven to be an ineffective tool for rehabilitating [Appellant] and deterring him from future antisocial conduct?

Appellant's Br. at 2.

Revocation of probation is "a matter committed to the sound discretion of the trial court[.]" ***Commonwealth v. Perreault***, 930 A.2d 553, 558 (Pa. Super. 2007). Appellate courts will not disturb a VOP court's revocation decision in "the absence of an error of law or an abuse of discretion." ***Id.*** As Appellant challenges the sufficiency of the evidence supporting the court's findings that he violated probation, "[w]e must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom,

_____

[6] Pa.R.Crim.P. 708(E) instructs that a motion to modify a sentence imposed after probation revocation "will not toll the 30-day appeal period."

when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all elements of the offenses." *Id.* (citation omitted).

Our review of a challenge to a sentence imposed following revocation of probation "is limited to determining the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing." *Id.* at 557 (citation omitted); *see also* 42 Pa.C.S. § 9771(b).

The probation revocation process is well-established. When a "probationer is detained pending a revocation hearing, due process requires a determination at a pre-revocation hearing, a *Gagnon I* hearing, that probable cause exists to believe that a violation has been committed." *Commonwealth v. Allshouse*, 969 A.2d 1236, 1240 (Pa. Super. 2009) (citation omitted). "Where a finding of probable cause is made, a second, more comprehensive hearing, a *Gagnon II* hearing, is required before a final revocation decision can be made." *Id.* (citation omitted).

To prove a probation violation meriting revocation at a *Gagnon II* hearing, the Commonwealth must demonstrate "by a preponderance of the evidence" that the probationer violated his probation and show that probation has been "an ineffective vehicle to accomplish rehabilitation [for the probationer] and not sufficient to deter against future antisocial conduct." *Commonwealth v. Colon*, 102 A.3d 1033, 1041 (Pa. Super. 2014) (citations omitted). Preponderance of the evidence involves "a more likely than not

inquiry," to determine whether the conclusion is "supported by the greater weight of the evidence; something a reasonable person would accept as sufficient to support a decision." **Commonwealth v. Parson**, 259 A.3d 1012, 1019 (Pa. Super. 2021) (citation omitted).

Appellant contends that the VOP court abused its discretion in finding that he "willfully violated the terms and conditions of his probation by failing to report as directed and failing to notify his probation officer of changes in his address." Appellant's Br. at 11. Appellant raises several arguments in support of this claim, which are either waived or meritless.

First, Appellant disputes the VOP court's conclusion that Appellant violated probation by failing to notify APPD of his alleged address changes. *Id.* at 15-18. Appellant argues that his transfers between various correctional facilities did not constitute changes of address, citing precedent holding that an incarcerated person maintains his pre-incarceration residency absent demonstration of a clear intent to transfer residency to their place of custody. *Id.* at 16-17. Appellant, however, did not raise this issue before the VOP court. Accordingly, we conclude that he waived this issue. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal"). Moreover, even if preserved, Appellant would not obtain relief on this issue as the VOP court found that Appellant violated probation based on his failure to report generally, in addition to his failure to report address changes. VOP Ct. Op., 2/21/25, at 3-4.

Second, Appellant contends that the evidence was insufficient to prove that Appellant failed to report as directed, given that the Commonwealth did not present any testimony nor enter the *Gagnon II* summary into evidence. Appellant's Br. at 12, 18-20. Appellant also claims that the *Gagnon II* summary was "double hearsay" as it contained the report of a non-testifying probation officer summarizing a former probation officer's notes.[7] *Id.* at 19. As with the first argument, we conclude that Appellant waived these challenges to the *Gagnon II* summary because he failed to raise these objections during the hearing or at any point before the VOP court; indeed, Appellant relied upon the *Gagnon* summaries during the hearing. *See* Pa.R.A.P. 302(a).

Third, Appellant contends that, even if there is sufficient evidence of Appellant's failure to report, "there was no evidence that this failure was willful, nor that probation has proven to be an ineffective tool for rehabilitating [Appellant.]" Appellant's Br. at 21, 21-24. Specifically, by relying upon case law from other states, Appellant argues that the failure to report while incarcerated is not a willful act given that the probationer does not have the capacity to report while incarcerated. *Id.* at 21-22. Additionally, Appellant asserts that the record does not contain sufficient evidence to conclude that he was not amenable to rehabilitation because he "was never given the

---

[7] Appellant also claims that the *Gagnon II* summary provided insufficient evidence of probation violations because it did not specify Appellant's reporting requirements. Appellant's Br. at 20. We address the sufficiency of the evidence in the next section of this memorandum.

- 8 -

opportunity to demonstrate whether probation could be an effective vehicle to accomplish his rehabilitation." *Id.* at 23.

We reject Appellant's sufficiency challenge and instead find that a preponderance of the evidence supports the VOP court's conclusion that Appellant willfully violated his probation. VOP Ct. Op. at 3-4. Appellant's own testimony demonstrated his awareness of the need to "make contact" with APPD, as well as to contact Montgomery County's probation and parole department. N.T. at 11. Moreover, his testimony that his attempts to contact APPD were unsuccessful provides sufficient evidence that he failed to report to APPD. We observe that Appellant acknowledged that he had access to a phone for ten minutes a day at one of the halfway houses, which he could have utilized to obtain information regarding his reporting requirements from sources other than the number he called unsuccessfully.[8]

Finally, we agree with Appellant that he has not had the opportunity to demonstrate whether probation could be effective rehabilitation. We conclude, however, that Appellant's contention supports the VOP court's imposition of a new two-year sentence of probation, rather than providing Appellant with a basis for relief. As the VOP court aptly observed, because of his failure to report, Appellant had not served "any part of his [original] two

_____

[8] The VOP court apparently found Appellant's asserted attempts to contact APPD not credible, as the VOP court opined that Appellant, during the 110 days when he was not incarcerated, "made no effort to report, even telephonically, during those periods of time, thereby violating the terms and condition[s] of his probation." VOP Ct. Op. at 4.

years of probation[.]" VOP Ct. Op. at 5-6. Accordingly, we conclude that the VOP court did not abuse its discretion in finding that Appellant's failure to report constituted a willful technical violation of his probation and that a new two-year term of probation would provide the court with the opportunity to supervise Appellant.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/2/2026